*Decision will be entered under Rule 50.*

MARY O'HARA ALSOP, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66914. Filed June 28, 1960.

*Holt S. McKinney, Esq.,* for the petitioner.
*Robert O. Rogers, Esq.,* for the respondent.

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax for the calendar years 1952, 1953, and 1954 in the amounts of $3,295.25, $6,574.52, and $2,976.35, respectively.

The issues are: (1) Whether petitioner is entitled to a loss deduction in connection with embezzled royalties that were never included by her as income in any Federal income tax return; and (2) whether the amounts of the embezzled royalties that were recovered constitute taxable income to the petitioner in the year of recovery.

FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

Petitioner is an individual residing at Bagburn Road, Monroe, Connecticut. She filed her Federal income tax returns for the years here involved with the director of internal revenue at Hartford, Connecticut.

Petitioner kept her books and records and filed her returns for each of the taxable years ended December 31, 1952, through December 31, 1954, on the cash receipts and disbursements basis of accounting.

Petitioner is a noted author. During the years 1942 to 1954, inclusive, she was engaged in the trade or business of writing books and articles for publication and sale to the public.

During the period from January 1, 1942, to June 6, 1952, petitioner had a literary agent named Rowe Wright. As such literary agent, Rowe Wright was lawfully authorized and empowered by petitioner to receive from the publishers of her books and writings and to have paid to Rowe Wright direct in her own name, for petitioner's account, any royalties due petitioner from the publishers and to give full and complete receipt and satisfaction therefor.

During the years 1942 to 1952, inclusive, Rowe Wright received royalties for petitioner's account from various foreign publishers located outside the United States, part of which royalties Rowe Wright embezzled and converted to her own use and benefit without the knowledge or consent of the petitioner. The total amounts received by Rowe Wright from the various foreign publishers during each of those years, the portion of those royalties that was remitted by Rowe Wright to petitioner, and the portion of those royalties that Rowe Wright embezzled and converted to her own use and benefit are as follows:

| Year | Amount received | Amount remitted | Amount embezzled |
|---|---|---|---|
| 1942 | $443.99 | 0 | $443.99 |
| 1943 | 1,020.32 | $193.10 | 827.22 |
| 1944 | 2,852.67 | 1,709.18 | 1,143.49 |
| 1945 | 3,114.47 | 3,233.10 | (118.63) |
| 1946 | 4,355.92 | 0 | 4,355.92 |
| 1947 | 6,886.93 | 1,507.60 | 5,379.33 |
| 1948 | 9,417.03 | 0 | 9,417.03 |
| 1949 | 10,755.07 | 1,795.18 | 8,959.89 |
| 1950 | 17,044.20 | 0 | 17,044.20 |
| 1951 | 8,926.47 | 0 | 8,926.47 |
| 1952 | 806.51 | 142.72 | 663.79 |
| Total | 65,623.58 | 8,580.88 | 57,042.70 |

No part of the royalties which Rowe Wright did not remit to petitioner has ever been treated by petitioner as income in any income tax return or reported by her as taxable income.

During the early part of 1952 petitioner accidentally discovered that certain foreign royalties were due her which she had never received.

On September 17, 1952, a judgment in favor of petitioner against Rowe Wright was rendered by the Supreme Court of the State of New York in the principal amount of $46,962.98, said principal amount being royalties embezzled by Rowe Wright which were paid

to her for petitioner's account by Pearn, Pollinger and Higham, Ltd., of London, England, during the years 1942 to 1952, inclusive.

In her return for 1952 petitioner deducted the principal amount of the 1952 judgment as a "Loss due to embezzlement and defalcation of funds by agent." By virtue of this claimed deduction, petitioner reported a net loss in the amount of $37,160.76 from her business or profession of writing for that taxable year. In her return for 1953 a portion of this claimed loss in the amount of $16,222.02 was deducted by petitioner as a net operating loss carryover from the year 1952.

On June 9, 1953, a second judgment in favor of petitioner against Rowe Wright was rendered by the Supreme Court of the State of New York in the principal amount of $10,079.72,[1] said principal amount being royalties embezzled by Rowe Wright which were paid to her for petitioner's account by various foreign publishers located in Norway, Denmark, Sweden, and Switzerland during the years 1942 to 1952, inclusive.

In her amended return for 1953 petitioner deducted the principal amount of the 1953 judgment as a "Loss due to embezzlement and defalcation of funds by agent." As the result of this claimed deduction, the amount petitioner reported as profit from her business or profession in her original return for 1953 was reduced by the amount of $10,079.72; the amount deducted by the petitioner as a net operating loss carryover from the year 1952, in her original return for 1953, was reduced by the same amount, $10,079.72; and the amount of the net operating loss carryover from 1952 that petitioner reported as available for subsequent years was increased by the same amount, $10,079.72. In her return for 1954 petitioner did not deduct any amount as a net operating loss carryover. However, she did claim a deduction in the amount of $3,255.84 as a net operating loss carryover from 1952, in her amended return for 1954.

During 1954 as a result of the judgments rendered by the Supreme Court of the State of New York, petitioner received from Rowe Wright the amount of $10,879.54 as partial recovery of the principal amounts of said judgments. No part of this amount was included by petitioner as income in her returns for 1954.

The respondent, in his determination of the deficiencies herein, disallowed the loss of $46,962.98 claimed by petitioner in her return for 1952; disallowed the $16,222.02 claimed by petitioner in her original return for 1953 as a net operating loss carryover from the year 1952; and included in petitioner's income for 1954 the $10,879.54 received by petitioner in that year as a partial recovery of the principal amounts of the two judgments totaling $57,042.70. In a

---

[1] The amount of this judgment, plus the 1952 judgment, equals the total amount embezzled of $57,042.70.

statement attached to the deficiency notice the respondent explained these adjustments as follows:

It is determined that the amount of $46,962.98 claimed in your original return for the year 1952 as an embezzlement loss is not allowable since it represents amounts never reported as income and no basis has been established for this claimed loss.

It is determined that you did not incur a net operating loss in the year 1952. Accordingly, you are not entitled to a claimed net operating loss carry-back of $16,295.70 to the year 1951 and to claimed net operating loss carry-overs in the amounts of $16,222.02 as set forth in your original return and $6,142.30 set forth in the amended return for the year 1953 and in the amounts of $3,255.84 claimed in your amended return for the year 1954 and $9,132.02 for subsequent years.

It is determined that the amount of $10,079.72 claimed in your amended return for the year 1953 as an embezzlement loss is not allowable since that portion represents amounts never reported as income and no basis has been established for this claimed loss.

It is further determined that the net proceeds, amounting to $10,879.54, received in satisfaction of a judgment for royalty income due you represents taxable income in the year of receipt, 1954.

#### OPINION.

We think the respondent's determination should be sustained.

We do not think petitioner is entitled to deduct the losses claimed for embezzlement. The embezzled royalties were never reported by petitioner as income, and we know of no case holding petitioner should have done so. In *Andrew E. Rossi*, 41 B.T.A. 734, we held that where an agent receives and misappropriates funds for his own use, there is no constructive receipt by the principal since in such case the agent is not acting on behalf of his principal, and the general rule that receipt of income by an agent is equivalent to receipt by the principal is not applicable.

The pertinent provisions of the Internal Revenue Code of 1939, applicable to losses by individuals, provide:

23(e) [In computing net income there shall be allowed as deductions] * * *. In the case of an individual, losses sustained during the taxable year * * * from theft. * * *

23(i) * * * The basis for determining the amount of deduction for losses sustained * * * shall be the adjusted basis provided in section 113(b) * * *

113(b) * * * The adjusted basis * * * shall be the basis determined under subsection (a) * * *

113(a) * * * The basis of property shall be the cost of such property * * *

Under the above provisions the amount of a deductible loss is limited to the cost of the embezzled property. Here, the cost of such property to petitioner was zero. She paid nothing for the income she failed to receive and, therefore, had no basis for determining loss.

We have consistently held that a taxpayer may not take a loss in connection with an *income* item as distinguished from a *capital*

item unless the income item has been previously taken up as income in the appropriate tax return. *Charles A. Collin*, 1 B.T.A. 305; *Charles K. Beekman*, 17 B.T.A. 643; *Ruth B. Rains*, 38 B.T.A. 1189, 1196; *Estate of H. H. Timken*, 47 B.T.A. 494, 496–499, affd. 141 F. 2d 625 (C.A. 6); *Maurice P. O'Meara*, 8 T.C. 622, 632; *John L. Seymour*, 14 T.C. 1111, 1117; and *Palmer Hutcheson*, 17 T.C. 14, 19. In the *O'Meara* case, we said:

> Before deductions for losses * * * can be availed of by taxpayers, a basis for the property involved must be established. See, e.g., *Helvering* v. *Gowran*, 302 U.S. 238 * * *. Where such items represent not capital, but income, no deduction is permissible which deals merely with anticipated profits. A taxpayer may not take a loss in connection with an income item unless it has been previously taken up as income in the appropriate tax return. * * * A short form for stating the rule might thus be that the process of establishing a basis for an income item consists, in effect, of reporting it in the taxpayer's gross income for tax purposes.

Petitioner, in contending that the embezzled royalties are deductible, cites as controlling *Bennet* v. *Helvering*, 137 F. 2d 537 (C.A. 2, 1943), reversing a Memorandum Opinion of this Court, and *Alison* v. *United States*, 344 U.S. 167.

We do not regard these cases as controlling authority for petitioner. In the *Bennet* case the court never considered the question whether the taxpayer there had any "basis" for loss under section 23(h) of the Revenue Act of 1934, which section is substantially the same as section 23(i) of the 1939 Code, *supra*. The very issue here involved was not considered in that case. Cf. *Teleservice Co. of Wyoming Valley*, 27 T.C. 722, 730–732, affd. 254 F. 2d 105 (C.A. 3), certiorari denied 357 U.S. 919. In the *Alison* case, the issue before the Court was whether embezzlement losses might be deducted in the year in which the embezzlements were discovered or whether under the 1939 Code such losses were deductible only in the year in which the theft occurred. The Court did not have before it the question whether a taxpayer has any "basis" in an "income" item which has never been included as income in the appropriate tax return. Therefore, the *Alison* case is not in point.

We also think the respondent was correct in including in petitioner's income for the year 1954 the amount of $10,879.54 received by petitioner in that year from Rowe Wright as partial recovery of the principal amounts of the judgments rendered in 1952 and 1953. This amount of $10,879.54 was a substitute for part of the royalties that had been embezzled during the years 1942 through 1952, no part of which had been reported by petitioner as income in those years.

The respondent's determination is sustained.

*Decision will be entered for the respondent.*